NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 10-4688/4771
_____

AXIS SPECIALTY INSURANCE COMPANY,
Appellant in No. 10-4688,

v.

THE BRICKMAN GROUP LTD., LLC,
Appellant in No. 10-4771.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 09-cv-3499)
District Judge:  Hon. John R. Padova
_____

Submitted Under Third Circuit LAR 34.1(a)
January 10, 2012

Before:  FUENTES, JORDAN, and NYGAARD, *Circuit Judges*.

(Filed January 23, 2012)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Axis Specialty Insurance Company ("Axis") sued The Brickman Group

Ltd., LLC ("Brickman"), alleging, among other claims, breach of contract for

Brickman's failure to repay funds Axis expended in settling a dispute covered by a

liability insurance policy. Brickman counterclaimed, alleging that Axis breached its duties under the policy by failing to contribute to Brickman's defense in its litigation of the same dispute. Following cross motions for summary judgment, the United States District Court for the Eastern District of Pennsylvania entered judgment in Brickman's favor as to Axis's claim, entered judgment in Axis's favor as to Brickman's counterclaim, and denied the parties' motions in all other respects. Axis and Brickman each appeal that order, urging that the District Court erred in granting the other party's summary judgment motion and in failing to otherwise grant their respective motions. For the reasons that follow, we will affirm the judgment of the District Court.

## I. Background

### A. *Facts*

In 2006, Deborah Peisel sued Brickman and Home Depot, seeking redress for injuries sustained when she fell in a Home Depot parking lot. Piesel claimed in her suit that Brickman, which had plowed the snow in Home Depot's parking lot, caused her injury by inadequately removing the snow.

At the time of Peisel's accident, Brickman owned two liability insurance policies. The first policy, purchased from ACE American Insurance Company ("ACE"), provided coverage in the amount of $750,000 over a self-insured retention (an "SIR")[1] of $250,000. The policy did not require ACE to defend

---

[1] Although the parties' briefing at times equivocates between the terms "SIR" and "deductible," the two are different. An "SIR is an amount that an

2

Brickman in litigation against it, but did state that ACE had "the right and opportunity to assume from the insured the defense and control of any claim or 'suit.'" (Joint App. at 152.)

The second policy, purchased from Axis, provided coverage in the amount of $5 million in excess of what it listed as the $1 million of total coverage provided by the ACE policy.[2] It required Brickman to maintain the ACE policy, but stated that failure to do so would "not invalidate t[he] insurance" Axis provided, which would instead "apply as if the underlying [ACE] insurance were in full effect." (Joint App. at 98 (internal quotation marks omitted).) The Axis policy further stated that Axis had a duty to defend Brickman in two circumstances:

> We will have the right and duty to defend the insured against "suits" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" covered by this policy when the "underlying insurance" does not provide such coverage.

insured retains and covers before insurance coverage begins to apply. Once [an] SIR is satisfied, the insurer is then liable for amounts exceeding the retention[,] less any agreed deductible." *In re Sept. 11th Liab. Ins. Coverage Cases*, 333 F. Supp. 2d 111, 124 n.7 (S.D.N.Y. 2004) (citing Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 13.13[a] (12th ed. 2004)). A deductible, by comparison, leaves the insurer with "the liability and defense risk from the beginning and then deducts the deductible amount from the insured coverage." *Id.*

[2] The specific policy language provided, in pertinent part, that Axis would "pay on behalf of … [Brickman] those sums in excess of the 'retained limit' which … [Brickman became] legally obligated to pay as damages … because of 'bodily injury… .'" (Joint App. at 80.) The policy defined "retained limit" as the "limits of 'underlying insurance' scheduled in the Declarations," (Joint App. at 103) which, in turn, listed the ACE policy and stated that the ACE policy had a $1 million per occurrence limit.

> We will also have the right and duty to defend the insured against "suits" seeking damages for "bodily injury", "property damage", "personal and advertising injury" or damages resulting from wrongful acts, errors or omissions arising out of the conduct of your business and covered by this policy, when the limits of insurance of the "underlying insurance" have been exhausted by payment of damages.

(Joint App. at 80.)

On January 23, 2008, after the parties in the Peisel action had just completed non-binding arbitration, Axis was informed by letter from an insurance broker that Axis's coverage could be implicated in resolving Peisel's claim. The letter stated that the arbitrator had concluded that Peisel sustained $2 million in pain and suffering damages and lost $172,748 in wages as a result of the accident, for which Brickman was cumulatively apportioned 65% of the liability. It advised, however, that the parties had 30 days to file an appeal, and that Peisel intended to do so inasmuch as she sought a $5 million settlement.

Axis stepped in and negotiated on behalf of Brickman, and ultimately reached a settlement with Peisel for $1.15 million.[3] The settlement was funded by both Axis and ACE, which paid $400,000 and $750,000, respectively. Brickman never paid its $250,000 SIR under the ACE policy and did not contribute any funds to the settlement. Recognizing that Brickman had failed to pay that sum,

---

[3] Despite Brickman's desire for a resolution of Peisel's case as to both Brickman and Home Depot, the settlement only settled Peisel's claims against Brickman.

4

Axis's counsel stated at the time the settlement was placed on the record in the Peisel action:

> [M]y understanding is that the $750,000 policy limits of [ACE] are available for the settlement, that a $400,000 offer on top of that $750,000 is made upon behalf of Brickman by [Axis] pursuant to its policy of insurance, that there will not be a concern addressed at this time and in this matter regarding the self-insured retention of … Brickman, which is represented to be $250,000, that we will work within our … own group here, not as part of this case, and the plaintiff has not to be concerned about it, that the money will be given as set forth, [$]750,000 from [ACE], [$]400,000 from [Axis] on behalf of Brickman.

(Joint App. at 183-84.)  Counsel for Brickman did not object.

On March 5, 2009, Axis's lawyer wrote Brickman to "seek the payment … of the $250,000.00 'retained limit' which is applicable to the *Peisel* claim – as set forth in the underlying ACE policy."  (Joint App. at 305.)

B.      *Proceedings in the District Court*

Brickman never paid Axis that sum, however, and this lawsuit against Brickman followed.[4]  Brickman interposed a counterclaim, alleging that Axis breached its duty to defend Brickman by failing to contribute to its legal expenses in the Peisel action.  Upon the parties' cross motions for summary judgment, the District Court entered judgment in Brickman's favor as to Axis's claim against Brickman, and judgment in Axis's favor as to Brickman's counterclaim against Axis.

---

[4] Axis's complaint initially pled that Axis was an intended third-party beneficiary of Brickman's insurance policy with ACE, but an amended complaint abandoned that theory.  Among other claims, the amended complaint pled claims against Brickman for breach of contract and unjust enrichment.

Axis timely appealed, and Brickman timely cross-appealed.

## II.    Discussion[5]

### A.    *Axis's Appeal*

Axis argues that the District Court erred in granting summary judgment in Brickman's favor on its breach of contract claim.

Under Pennsylvania law,[6] "a plaintiff seeking to proceed with a breach of contract action must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (alteration in original) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)); *see McShea v. City of Phila.*, 995 A.2d 334, 340 (Pa. 2010) (same).  According to Axis, Brickman breached its contractual duty to pay

---

[5] The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction over this appeal under 28 U.S.C. § 1291, and exercise plenary review of the District Court's order resolving the parties' cross motions for summary judgment. *Tristani ex rel. Karnes v. Richman*, 652 F.3d 360, 366 (3d Cir. 2011).  Accordingly, we view the facts in the respective non-moving parties' favor to determine whether the District Court correctly found that "there [was] no genuine dispute as to any material fact and [that the respective moving parties were] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Funk v. CIGNA Grp. Life Ins.*, 648 F.3d 182, 190 (3d Cir. 2011) ("Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." (citation omitted)).

[6] Both parties assume that their claims should be resolved under Pennsylvania's substantive law, and we accept that choice of law for purposes of our analysis.

Axis the $250,000 expended in settling the Peisel suit so as to satisfy its SIR under the ACE policy.

That position is fatally flawed. There is, as Axis tacitly acknowledges by urging us to read the Axis policy and the ACE policy as "part of a unitary liability insurance program maintained by Brickman" (Axis Reply Br. at 2), no provision in Axis's policy with Brickman that requires Brickman to pay the first $250,000 of any settlement or otherwise reimburse Axis for the payment it made. Although the ACE policy does contain an SIR that Brickman was required to pay under that policy, Axis cannot use a duty created by a separate contract, to which it is neither a party nor a third-party beneficiary,[7] to recover in contract against Brickman.

Nor can Axis create the missing contractual duty by relying on the provision that its coverage would "apply as if the 'underlying [ACE] insurance' were in full effect" even if Brickman failed to maintain the ACE coverage. (Joint App. at 98.) That Axis promised to provide coverage in excess of $1 million regardless of the existence of an underlying policy purportedly insuring Brickman up to that amount does not, and cannot, imply a corresponding, unwritten promise by Brickman to pay Axis back any sum expended above and beyond that which Axis was contractually required to pay. *Cf. Melton v. Melton*, 831 A.2d 646, 654 (Pa. Super. Ct. 2003) ("When an essential term is missing from the contract, the

---

[7] Because Axis abandoned its third-party-beneficiary theory in the District Court, *see supra* note 4, we accept it as given, for purposes of our analysis, that Axis was not an intended third party beneficiary of the ACE policy.

court may imply such a term only when it is necessary to prevent injustice and it is abundantly clear that the parties intended to be bound by such term." (internal quotation marks and citation omitted)).

Thus, because there is no contractual duty in the insurance policy that requires Brickman to pay Axis the $250,000 that Axis expended in settling the Peisel suit, we will affirm the District Court's judgment in Brickman's favor on Axis's contract claim.

B.     *Brickman's Appeal*

Brickman argues that the District Court erred in granting summary judgment in Axis's favor as to its counterclaim for breach of contract because it expended $391,740.66 in defense costs for the Peisel suit, for which Axis owed Brickman a duty to defend.

Brickman first contends that Axis owed Brickman that duty because its policy stated that Axis would have "a duty to defend … [Brickman] against suits seeking damages for bodily injury, property damage or personal and advertising injury covered by th[e] policy when the underlying insurance does not provide such coverage." (Joint App. at 80 (internal quotation marks omitted).) According to Brickman, that provision's use of the term "such coverage" refers to the duty to defend, not to "damages … covered by th[e] policy" (*id.*), and Axis's duty was thus triggered in the Peisel litigation because the underlying ACE policy did not include a duty to defend that action.

8

The District Court rejected Brickman's proffered contractual construction, and we have little to add. Although we must, like the District Court, construe any ambiguity in the insurance policy in Brickman's favor, we conclude that the term "such coverage" unambiguously refers back to the damages covered by the policy and not the duty to defend. *See Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983) ("Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer … . Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." (internal citation omitted)). Like the District Court, we find it telling that the policy's reference to "damages … *covered* by th[e] policy" and to "such *coverage*" (Joint App. at 80 (emphasis added)), both use the root word "cover."

Although that choice of language is clear enough on its own to indicate that "such coverage" refers to damages covered by the policy, we are further persuaded by the use of the term "coverage" in the insurance context. As the District Court observed, the duty to defend is sometimes described to be an altogether separate concept from "coverage." *See, e.g.*, *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 540-41 (Pa. 2010) ("An insurer's duty to defend … is a distinct obligation, separate and apart from the insurer's duty to provide coverage." (internal citations omitted)). Coupled with the clear meaning of the term "such coverage" in the context in which it is used in the Axis policy, that understanding

9

demonstrates that Brickman's reading of the policy language is untenable. Thus, we agree with the District Court that Axis's duty to defend was not implicated.[8]

Brickman next argues that Axis owed a duty to defend under the policy provision requiring Axis to defend Brickman "when the limits of insurance of the underlying insurance have been exhausted by payment of damages." (Joint App. at 80 (internal quotation marks omitted).) However, as that policy language clearly states,[9] Axis's duty to defend under that provision did not arise until the underlying insurance's limits were "exhausted by *payment* of damages." (*Id.* (emphasis added).) That, as the parties agree, did not occur in this case until ACE paid the $750,000 contribution towards settling the Peisel dispute, and Axis's duty

---

[8] Brickman contends that the construction we adopt does not accord with the parties' expectations because it fails to fill a gap in coverage created by the ACE policy, which contained no duty to defend. While the argument is beside the point, given the unambiguous language in the policy itself, *see Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982) ("[W]hen the words [in a written contract] are clear and unambiguous the intent is to be discovered only from the express language of the agreement."), we disagree with its substance. As the District Court noted, reading "such coverage" to refer to damages covered by the policy most readily accords with the separate provision of the Axis policy that extends a duty to defend when "the limits of insurance of the … [ACE policy] have been exhausted by payment of damages." (Joint App. at 80 (internal quotation marks omitted).)

[9] Brickman's reliance on *Cooper Laboratories, Inc. v. International Surplus Lines Insurance Company*, 802 F.2d 667 (3d Cir. 1986) is unavailing. The policy language in that case stated that if "the bodily injury … is included within the products hazard, the [carrier] shall have the right and duty to defend any suit against the Insured." *Id.* at 675 (alterations in original) (internal quotation marks omitted). Our determination that the insurer's duty to defend was triggered in that case following a demand in excess of an insured's SIR was based on that policy's contractual language which – unlike the policy language at issue here – did not limit the duty to cases in which the underlying insurance (or, as the case may be, SIR) was "exhausted by payment of damages." (Joint App. at 80.)

10

to defend did not arise until that point. *Cf. Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 538 (5th Cir. 2002) (stating that "the majority of … jurisdictions" interpret similar policy language to mean that "[t]he excess carrier's duty to defend does not arise until the underlying … insurance coverage has been paid out"). As the District Court correctly observed, there is no evidence in the record that Brickman thereafter incurred any defense costs for which Axis would be responsible.[10]

Accordingly, because the policy language does not support Brickman's contention that Axis breached its contractual duty to defend, we will affirm the District Court's judgment in favor of Axis on Brickman's counterclaim.

## III. Conclusion

For the foregoing reasons, we will affirm the District Court's judgment.

---

[10] Brickman argues that even if Axis's duty to defend was not triggered until the ACE policy was exhausted in settling the Peisel action, "the contingency in th[e Axis policy] [was] satisfied," once that happened and Axis was therefore required to contribute towards defense expenses that were already incurred. (Brickman's Opening Br. at 34.) That argument, however, was not properly presented to the District Court, and we therefore decline to consider it. *See Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011) ("It is axiomatic that arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances." (internal quotation marks and citation omitted)).

11